UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------X

VINCENT PESIRI,

                          Plaintiff,

    -against-

PERSONALIZED INDEPENDENT LIVING
OPPORTUNITIES & TRAINING SERVICES, INC.,
T.J. (last name unknown), *individually*,
and RYAN TURPIN, *individually*.

                          Defendants.

CIVIL ACTION NO.

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

------------------------------------------------------------------------X

Plaintiff, VINCENT PESIRI, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C. §1981, 42 U.S.C. §1983 and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being Discriminated against, Retaliated against, and terminated by his employer solely due to his race, color and national origin.

2. With regard to the Fair Labor Standards Act claims, Plaintiff seeks equitable and monetary relief for the unlawful actions of PERSONALIZED INDEPENDENT LIVING OPPORTUNITIES & TRAINING SERVICES, INC., including back pay, liquidated damages, attorney's fees and expenses, and all other relief to which he is entitled pursuant to the Fair Labor Standards Act.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 42 U.S.C. §2000e to 2000e-17, 42 U.S.C. §1981,  42 U.S.C. §1984, 29 U.S.C. §2617; 28 U.S.C. §1331, and supplemental jurisdiction thereto.
4. This action involves a question of Federal Law under Title VII of the Civil Rights Act of 1964.
5. Venue is proper in this district based upon the fact that Defendants' principal place of business within the County of Camden, State of New Jersey, within the District of New Jersey. Additionally, the events took place within the District of New Jersey.
6. On or about June 22, 2018 Plaintiff filed charges with the EEOC against Defendants as set forth herein.
7. On or about January 12, 2018, the EEOC sent Plaintiff a Right to Sue Letter.
8. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

9. Plaintiff VINCENT PESIRI (hereinafter referred to as Plaintiff and/or "PESIRI") is an individual White/Caucasian male who is a resident of the County of Essex within the State of New Jersey.
10. Defendant PERSONALIZED INDEPENDENT LIVING OPPORTUNITIES & TRAINING SERVICES, INC. (hereinafter referred to as Defendant and/or "PILOT"), is a domestic nonprofit corporation organized and duly existing under the laws of the State of New Jersey located at 289 Jackson Road Berlin, NJ 08004.

11. At all times material, Defendant T.J. (last name unknown) (hereinafter "T.J.") was and is employed by Defendants as a Supervisor (though at a higher level than Plaintiff).

12. At all times material, Defendant T.J. held supervisory authority over Plaintiff.

13. At all times material, Defendant RYAN TURPIN (hereinafter "TURPIN") was and is employed by Defendants as a Supervisor (though at a higher level than Plaintiff).

14. At all times material, Defendant T.J. held supervisory authority over Plaintiff.

## MATERIAL FACTS

15. Plaintiff VINCENT PESIRI (hereinafter referred to as Plaintiff and/or "PESIRI") is an individual White/Caucasian male who is a resident of the County of Essex within the State of New Jersey.

16. Defendant PILOT is a domestic nonprofit corporation organized and duly existing under the laws of the State of New Jersey.

17. Defendant PILOT's website states that "P.I.L.O.T. Services offers a full array of community support services to individuals with developmental disabilities. We offer a menu of programs and services that include residential, Day Programs (Crew Labor & facility-based community programs) and Community Living Programs.

18. At all times material, Defendant PILOT operated and continues to operate community support day programs for disabled adults out of its facilities located at and immediately adjacent to 289 Jackson Road, Berlin, NJ, 08009 (hereinafter the "Jackson Road facility.")

19. At all times material, PILOT (hereinafter "Defendants") employed Plaintiff as a Supervisor at the Jackson Road facility.

20. At all times material, Defendant T.J. (last name unknown) (hereinafter "Defendant" or "T.J." was and is employed by Defendants as a Supervisor (though at a higher level than Plaintiff).

21. At all times material, Defendant T.J. held supervisory authority over Plaintiff.

22. At all times material, Defendant TURPIN was and is employed by Defendants as a Supervisor (though at a higher level than Plaintiff).

23. At all times material, Defendant T.J. held supervisory authority over Plaintiff.

24. In or around October 2016, Plaintiff began working for Defendant PILOT as a Supervisor.

25. When Plaintiff was hired, he was one of the only White/Caucasian employees working for Defendant.

26. Defendant's other employees in Plaintiff's role (and in many other roles) are almost exclusively Black/African-American.

27. Almost immediately upon Plaintiff's hiring, Defendant's Black/African-American employees began harassing Plaintiff because of his race, national origin, and color.

28. Plaintiff was harassed by numerous co-workers and supervisors, including but not limited to TURPIN, Ryan Moore (hereinafter "MOORE"), and Eric (last name unknown) (hereinafter "ERIC").

29. By means of example only, and by no means intended to be an exhaustive list, Defendant's employees would have called Plaintiff a "cracker" on a regular basis, and would loudly state they "can't work with this White guy."

30. Defendants' employees would also complain about and make fun of Plaintiff for being "European" and would state in words or substance that Plaintiff would be "the first to get fired" because he was White.

31. On multiple occasions, Defendants' employees told Plaintiff that he was "going to make your [Plaintiff's] life a living hell because you made ours a living hell."

32. On information and belief, these comments were referring to White/Caucasian people in general by the use of the word "your" and Black/African-American people in general by the use of the word "ours."

33. Defendants' employees regularly stated to Plaintiff that they "hated white people." Plaintiff would typically attempt to ignore the comments to avoid confrontation.

34. Defendants' employees' racially-charged comments were regularly made in front of Defendants' residents and clients. On each occasion, Plaintiff was highly offended and embarrassed by the comments.

35. On numerous occasions, Defendant's employees would hide work materials from Plaintiff and prevent him from being able to accomplish his job duties.

36. By means of example only, one on occasion, one of Plaintiff's supervisors took a folder from him that Plaintiff typically kept in his truck, and stated that Plaintiff had lost it. Plaintiff later found the folder hidden in a closet.

37. Plaintiff regularly reported the continual harassment and discrimination to multiple supervisors, (including T.J., TURPIN, and another supervisor named Sam (last name unknown)) as well as directly opposing the harassment perpetrated by supervisory employees.

38. At all times material, Defendant PILOT failed to investigate or to take any appropriate remedial measures regarding Plaintiff's complaints.

39. On many occasions, Plaintiff's supervisors would simply laugh in response to Plaintiff's reports of harassment and discrimination.

40. After Plaintiff reported the harassment and discrimination, he was physically threatened by multiple co-workers in retaliation for his reports of unlawful discrimination.

41. In or around April 2017, Plaintiff observed several of Defendants' employees mistreating and physically abusing residents. Subsequently, Plaintiff made an anonymous report of the mistreatment to the appropriate state agency.

42. After Plaintiff made this report, Plaintiff's co-workers deduced that Plaintiff had been the one who made the report, and consequently escalated their harassment of Plaintiff.

43. On or around April 14, 2017 (Good Friday) Plaintiff was told that he was not scheduled to work on Monday. However, Defendants then called Plaintiff on the following Monday and demanded to know why he was not at work.

44. In fact, Plaintiff had been scheduled to work, but was falsely told that he was not on the schedule.

45. On information and belief, this was done intentionally in order to falsely create reason to discipline Plaintiff.

46. On yet another occasion, Plaintiff received a write-up, allegedly for being on his personal cell phone during work hours.

47. However, Defendants' similarly situated Black/African-American employees were typically not written up for using their personal phones during work.

48. On or around April 20, 2017, during a meeting at work in which TURPIN and T.J. were present, Plaintiff again stated that he was increasingly uncomfortable with the continued harassment and discrimination.  Once again, Defendants failed to take any appropriate action in response.

49. On or around April 25, 2017, a mere five (5) days since his latest report of harassment and discrimination, Defendant wrongfully terminated Plaintiff, purportedly for calling out of work four times since the start of his employment in October of the previous year.

50. Defendants failed to pay Plaintiff for any of his accrued personal days and vacation time upon his termination.

51. Defendants wrongfully terminated Plaintiff in retaliation for his reporting of and opposition to the constant racial harassment and discrimination.

52. Plaintiff complains that Defendants discriminated against and terminated Plaintiff because of his race, color, and national origin and because he complained or opposed the unlawful conduct of Defendants related to the above protected classes.

53. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

55. Plaintiff claims constructive/actual discharge and also seeks reinstatement.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

57. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

58. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. Section 1981
## (Discrimination and Retaliation)

58. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

59. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

60. Plaintiff, as a member of the Black and/or African-American race, was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's national origin and race.

63. SEC. 2000e-2. *[Section 703]* states as follows:

    (a) Employer practices

    It shall be an unlawful employment practice for an employer -

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

64. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, color, and national origin.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII
(NOT AGAINST INDIVIDUAL DEFENDANTS)**

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

67. Defendants retaliated against Plaintiff because she opposed Defendants' unlawful employment practices.

**AS A FOURTH CAUSE OF ACTION
UNDER NEW JERSEY STATE LAW
DISCRIMINATION**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race, . . . , color, national origin . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

70. The full statute reads as follows:

> **10:5-12. Unlawful employment practices, discrimination.**
> It shall be an unlawful employment practice, or, as the case may be, an unlawful

discrimination:

 a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; provided further that it shall not be an unlawful employment practice for a club exclusively social or fraternal to use club membership as a uniform qualification for employment, or for a religious association or organization to utilize religious affiliation as a uniform qualification in the employment of clergy, religious teachers or other employees engaged in the religious activities of the association or organization, or in following the tenets of its religion in establishing and utilizing criteria for employment of an employee; provided further, that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the

employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.

71. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

72. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

75. Defendants violated this section as set forth herein.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## AS A SIXTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING

77. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

79. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

80. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

81. As such, Plaintiff has been damaged as set forth herein.

82. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

DATED: January 23, 2018

                                           DEREK SMITH LAW GROUP, PLLC
                                           Attorneys for Plaintiff
                                           By: _____
                                                Caroline H. Miller, Esq.
                                                1845 Walnut Street, Suite 1601
                                                Philadelphia, Pennsylvania 19103
                                                (215) 391-4790